ALICE M. BATCHELDER, Chief Judge,
dissenting.
The majority holds that the USEPA may challenge the operator’s preconstruction emissions projection, regardless of the actual emissions, and remands for USEPA to pursue such proceedings. While I agree with much of the majority opinion, I must ultimately dissent for the reasons that follow.
As a preliminary matter, I am uncomfortable with the majority’s reliance on statements about the law made by counsel at oral argument. Four times during its analysis, the majority cites to a legal premise that one or another of the appellate attorneys “conceded” or “stated” at oral argument, at least two of which appear to be crucial concessions. See Maj. Op., supra (“that EPA could use its enforcement powers to force operators to make the projection,” and that, if the operator “misread the rules,” USEPA “could then make them do [an improper] projection right”).[1] Given the enormity of this decision, and the effect it may have on every stationary source operator in the Sixth Circuit if not beyond, it would be useful to have a citation to a statute, a regulation, or a case — something more substantive than one advocate’s extemporaneous comments at appellate oral argument.
But if we are going to rely on statements by counsel, there is a statement by counsel on appeal, concerning a fact specific to this case, that is even more important to the outcome of this decision. In its appellate brief, DTE’s counsel wrote:
And although not part of the record here, Detroit Edison can represent that it submitted to MDEQ a postconstruction annual emissions report pursuant to Mich. Admin. Code R. 336.2818(3)(d) on February 28, 2012, and that report shows no increase in annual emissions at Monroe Unit 2 for the first full calendar year following the project. In fact, that report shows substantially lower emissions from Monroe Unit 2 during 2011 than the unit’s emissions before the projects.
Appellee Br. at 25-26. If true, this fact renders moot the case or controversy about pre-construction emissions projections — there can be no permitting or reporting violation because there was, conclusively, no major modification. See 40 C.F.R. § 52.21(a)(2)(iv)(b) (“Regardless of any ... preconstruction projections, a ma *653 jor modification results if the project causes a significant emissions increase and a significant net emissions increase.”); Mich. Admin. Code R. 336.2802(4)(b). This project caused no emissions increase and, in fact, resulted in an emissions decrease. All of which begs the question: what exactly does the majority anticipate the district court will do with this on remand? Allow the USEPA to challenge preconstruction projections that actual events have already proven correct? I would hold that these subsequent actual results render the present dispute moot.
Finally, even if this were not moot (or if it were appropriate for us to provide advisory opinions on moot questions), I still could not join the majority opinion because I find it logically flawed and, correspondingly, legally incorrect. The majority holds, on the one hand, that this scheme “does not contemplate [USEPA] approval of the projection prior to construction,” and “if the agency can second-guess the making of the projections, then a project- and-report scheme would be transformed into a prior approval scheme,” which the majority rejects: “this does not mean that the agency gets in effect to require prior approval of the projections.” Maj. Op., supra. I agree entirely.
But then the majority immediately, directly, and — at least to me — inexplicably contradicts itself, holding that the USEPA can initiate enforcement proceedings to challenge the operator’s projections: “The operator has to make projections according to the requirements for such projections contained in the regulations.[2] If the operator does not do so, and proceeds to construction, it is subject to an enforcement proceeding.” Maj. Op., supra. The majority ultimately holds that USEPA must be able to challenge the accuracy of the operator’s scientific or technical pre-construction projections and remands the case for renewed (further) proceedings in the district court on that basis. Let us be very clear, if the USEPA can challenge the operator’s scientific preconstruction emissions projections in court — to obtain a preliminary injunction pending a court decision as to whether the operator or USEPA has calculated the projections correctly[3]— that is the exact same thing as requiring prior approval. Put the other way, under a prior-approval scheme, if USEPA disagreed with the projections and forbid construction on that basis, the operator would have to go to the court for a final decision on the projections.[4] The only difference between the scheme that majority endorses and the prior-approval scheme (that the majority purports to reject) is which party is the plaintiff and which the defendant. Otherwise, it is identical.
For the forgoing reasons, I would be inclined to dismiss this appeal as moot. Barring that, I would affirm the judgment *654 of the district court. In either event, I must respectfully dissent.

. To be sure, neither of these issues is in question here: there is no contention that DTE failed to prepare a projection (it did) or that DTE misread the rules in applying the governing regulation (it did not). Instead, USEPA relies on its expert’s opinion to second-guess DTE’s projections. See Appellant Br. at 25 ("EPA can use its projections to demonstrate that the operator should have projected a PSD-triggering emissions increase.”); 24 (“The agency can use its own emissions projections to demonstrate that a proper pre-construction analysis would have shown an emissions increase.”). USEPA’s disagreement is entirely technical and scientific; the dispute is not about the regulation.

.It bears repeating that USEPA does not contend that DTE failed to make a projection or failed to follow the regulations; rather, USEPA relies on its expert’s opinion to second-guess DTE’s technical/scientific projections. See n.l, supra. If the issue here had been one of the foregoing (i.e., if USEPA had wanted to challenge an operator's failure to make a projection or failure to follow the governing regulation — a challenge that would not require USEPA to rely on an expert's scientific opinion), that would present different considerations and perhaps result in a different outcome. Because neither of those issues is before us, it is neither necessary nor appropriate to address them here.

. The relief that USEPA sought in the district court was an injunction to stop the construction.

. Put yet another way, a preliminary injunction is only a viable remedy if this is a de facto prior-approval scheme. If prior approval were not necessary, there would be no place for a preliminary injunction to uphold construction.